UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

F I L E D

FEB 1 8 2011

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

| | | |
|---|---|---|
| HENRY MANDEL, on behalf of himself and all others similarly situated, | § § § § | Civil Action No. 3:11CV120 |
| | | CLASS ACTION |
| Plaintiffs, | § § | |
| | § | COMPLAINT FOR BREACH OF |
| v. | § § | FIDUCIARY DUTY |
| JAMES B. CRAWFORD, ROBERT H. FOGLESONG, RICHARD M. GABRYS, ROBERT B. HOLLAND, BOBBY R. INMAN, DAN R. MOORE, BAXTER F. PHILLIPS, JR., STANLEY C. SUBOLESKI, LINDA J. WELTY, MASSEY ENERGY COMPANY, and ALPHA NATURAL RESOURCES, INC., | § § § § § § § § § § § § § | DEMAND FOR JURY TRIAL |
| Defendants. | § | |

Plaintiff Henry Mandel ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to the allegations which pertain to Plaintiff, which allegations are based upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      This is a stockholder class action brought by Plaintiff on behalf of the holders of Massey Energy Company ("Massey" or the "Company") common stock against certain of the Company's officers and/or directors (the "Board") arising out of defendants' efforts to sell Massey via an unfair process and at an unfair price of $10.00 in cash and 1.025 shares of Alpha common stock for each outstanding share of Massey's common stock (the "Proposed Acquisition"). The Board was aided and abetted in their breaches of fiduciary duties at all times by the Company and Alpha, which is also a named defendant in this action. In pursuing the unlawful Proposed Acquisition, each of the defendants violated applicable law by directly

breaching and/or aiding the other defendants' breaches of their fiduciary duties of loyalty, due care, candor, independence, good faith and fair dealing.

2.      In 2008, Massey's stock traded substantially above the price being offered in the Proposed Acquisition. But like many other companies, Massey's stock price took a substantial hit as a result of the subsequent global economic meltdown. Nevertheless, Massey's stock price has rebounded and the Company is poised for substantial growth. Unfortunately, defendants, via the Proposed Acquisition, have acted to cap the Company's stock price and transfer the growth it is poised to make to Alpha. Furthermore, they have acted to ensure that potential competing bids for the Company are stifled by improper defensive mechanisms, including a "no solicitation" provision, which prevents the Individual Defendants from searching for a superior proposal, and a $251 million termination fee.

3.      In pursuing this unlawful plan to divest the Company's public stockholders of their holdings in the Company at an unfair price and through the implementation of a flawed process, defendants have breached their fiduciary duties of loyalty, due care, independence, candor, good faith and fair dealing, and/or have aided and abetted therein. Instead of attempting to negotiate a contract reflecting the highest price reasonably available for the Company's stockholders, defendants spent substantial effort tailoring the Proposed Acquisition to meet the specific needs of Company insiders and Alpha.

4.      Because defendants dominate and control the business and corporate affairs of Massey and are in possession of private corporate information concerning the Company's assets, business and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Massey, which makes it inherently

unfair for them to execute and pursue any proposed merger agreement under which they will reap disproportionate benefits to the exclusion of maximizing stockholder value.

5.     In short, the Proposed Acquisition is designed to unlawfully divest the Company's public stockholders of the valuable assets of the Company for grossly inadequate consideration. Defendants have acted to place their self-interests ahead of the interests of shareholders of Massey, and/or have aided and abetted therein.

6.     Plaintiff seeks injunctive relief to prevent defendants from consummating the Proposed Acquisition unless and until the defendants' breaches of fiduciary duty are rectified.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction under Article III of the United States Constitution and 28 U.S.C. § 1332 because complete diversity exists between the parties and the amount in controversy exceeds $75,000.

8.     This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the courts of this District permissible under traditional notions of fair play and substantial justice.

9.     Venue is proper in this Court because one or more of the defendants either resides in or maintains executive offices in this District, a substantial portion of the transactions and wrongs complained of herein occurred in this District, and defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

10.     Plaintiff Henry Mandel ("Plaintiff") is, and at all times relevant hereto was, a shareholder of Massey. Plaintiff is a citizen of New York.

11.     Defendant Massey is a Delaware corporation with its headquarters and principal place of business in Richmond, Virginia. With operations in West Virginia, Kentucky and Virginia, Massey is the largest coal producer in Central Appalachia. Massey produces, processes and sells various steam and metallurgical grade coals through its 26 processing plants, docks and shipping centers and employs through its various subsidiaries more than 7,300 employees.

12.     Defendant Alpha is a Delaware corporation with its headquarters and principal place of business in Abingdon, Virginia. Alpha is an American coal supplying and production company, with coal production capacity of greater than 90 million tons a year. The Company, through its affiliates, employs approximately 6,400 people and operates approximately 60 mines and 14 coal preparation facilities in Appalachia and the Powder River Basin.

13.     Defendant Bobby R. Inman ("Inman") has been the Chairman of the Board of Massey since December 2010 and has been a director since 1985. Inman also serves as the Chairman of the Executive, Governance and Nominating, and Public Policy Committees and is a member of the Compensation Committee. Inman is a citizen of Texas.

14.     Defendant Baxter F. Phillips, Jr. ("Phillips") has been the Chief Executive Officer ("CEO") and President of Massey since December 2010 and has been a director since May 22, 2007. Philips is also a member of the Finance Committee. Phillips is a citizen of Virginia.

15.     Defendant James B. Crawford ("Crawford") has been a director of Massey since February 7, 2005. Crawford is Chairman of the Safety and Environmental Committee and is a

member of the Audit, Compensation and Executive Committees. Crawford is a citizen of Virginia.

16.     Defendant Robert H. Foglesong ("Foglesong") has been a director of Massey since February 21, 2006. Foglesong is Chairman of the Compensation Committee and is a member of the Audit, Executive, Safety and Environmental and Public Policy Committees. Foglesong is a citizen of Mississippi.

17.     Defendant Richard M. Gabrys ("Gabrys") has been a director of Massey since May 22, 2007. Gabrys is Chairman of the Finance Committee and is a member of the Executive, Governance and Nominating and Public Policy Committees. Gabrys is a citizen of Michigan.

18.     Defendant Robert B. Holland ("Holland") has been a director of Massey since August 16, 2010. Holland is a member of the Governance and Nominating Committee and the Safety and Environmental Committee. Holland is a citizen of Texas.

19.     Defendant Dan R. Moore ("Moore") has been a director of Massey since January 22, 2002. Moore is Chairman of the Audit Committee and a member of the Compensation, Executive, Finance and Public Policy Committees. Moore is a citizen of West Virginia.

20.     Defendant Stanley C. Suboleski ("Suboleski") has been a director of Massey since May 13, 2008. Suboleski is a member of the Finance, Public Policy and Safety and Environmental Committees. Suboleski is a citizen of Virginia.

21.     Defendant Linda J. Welty ("Welty") has been a director of Massey since August 16, 2010. Welty is a member of the Audit Committee and the Governance and Nominating Committee. Welty is a citizen of Georgia.

22.     The defendants named above in ¶¶13-21 are sometimes collectively referred to herein as the "Individual Defendants."

## DEFENDANTS' FIDUCIARY DUTIES

23.     Under Delaware law, in any situation where the directors of a publicly traded corporation undertake a transaction that will result in either: (i) a change in corporate control; or (ii) a break-up of the corporation's assets, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, including a significant premium. To diligently comply with these duties, neither the directors nor the officers may take any action that:

(a)     adversely affects the value provided to the corporation's shareholders;

(b)     will discourage, inhibit or deter alternative offers to purchase control of the corporation or its assets;

(c)     contractually prohibits them from complying with their fiduciary duties;

(d)     will otherwise adversely affect their duty to secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

(e)     will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

24.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Massey, are obligated under Delaware law to refrain from:

(a)     participating in any transaction where the directors' or officers' loyalties are divided;

(b)     participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)    unjustly enriching themselves at the expense or to the detriment of the public shareholders.

25.    Plaintiff alleges herein that the defendants, separately and together, in connection with the Proposed Acquisition, are knowingly or recklessly violating their fiduciary duties and aiding and abetting such breaches, including their duties of loyalty, good faith and independence owed to Plaintiff and other public shareholders of Massey. The Individual Defendants are engaging in self-dealing and are obtaining for themselves personal benefits, including personal financial benefits, not shared equally by Plaintiff or the Class (as defined herein), in connection with the Proposed Acquisition. As a result of the Individual Defendants' self-dealing and divided loyalties, neither Plaintiff nor the Class will receive adequate or fair value for their Massey common stock in the Proposed Acquisition.

26.    Because the Individual Defendants are knowingly or recklessly breaching their duties of loyalty, good faith and independence in connection with the Proposed Acquisition, the burden of proving the inherent or entire fairness of the Proposed Acquisition, including all aspects of its negotiation, structure, price and terms, is placed upon defendants as a matter of law.

## BACKGROUND TO THE PROPOSED ACQUISITION

27.    Massey, founded in 1920, is headquartered in Richmond, Virginia and employed a reported 5,851 persons at the end of 2009. Massey is the fourth largest coal producer in the United States, with extensive coal mining operations in West Virginia, Kentucky and Virginia. Through its wholly owned subsidiary, A.T. Massey Coal Company, Inc., Massey produces, processes, and sells bituminous coal primarily in the United States. As of January 31, 2010, it operated 56 mines, including 42 underground mines and 14 surface mines in West Virginia,

Kentucky, and Virginia. Massey also owns and operates approximately 160 wells, 200 miles of

gathering line, and various small compression facilities in Appalachian Basin. Massey's stock

has benefitted greatly due to the dramatic rise of coal consumption by developing countries such

as Brazil, Russia, India and China. Former Massey CEO, Don Blankenship recently predicted

that coal use would increase by 81 percent in "emerging" countries and 1 percent in developed

countries by 2035.

28.     Massey's stock traded at prices substantially higher than the consideration being

offered in the Proposed Acquisition throughout much of 2008. Massey stock prices dropped

during the global economic recession; however, Massey's stock prices recorded an increase of

more than 450% from its low two years ago. Given its strong position in the coal industry and

the Company's forecast of increased global demand, Massey is poised for further recovery.

## THE PROPOSED ACQUISITION

29.     In a January 29, 2011 press release entitled "Alpha Natural Resources and Massey

Energy Agree to $8.5 Billion Combination," Alpha and Massey announced, in pertinent part:

> Alpha Natural Resources, Inc. (NYSE: ANR) ("Alpha") and Massey Energy
> Company (NYSE: MEE) ("Massey") announced today that they signed a
> definitive agreement under which Alpha will acquire all outstanding shares of
> Massey common stock, subject to customary closing conditions including
> stockholder approval of both companies. Under the terms of the agreement,
> Massey stockholders will receive, at the closing, 1.025 shares of Alpha common
> stock and $10.00 in cash for each share of Massey common stock. Based on the
> closing share price of Alpha common stock as of January 28, 2011, the agreement
> placed a value of $69.33 per share of Massey common stock (implying $8.5
> billion enterprise value for Massey) and represents a 21% premium to Massey's
> current share price. Upon completion of the transaction, Alpha and Massey
> stockholders will own approximately 54% and 46% of the combined company,
> respectively.
>
> The merger will bring together Alpha's and Massey's highly complementary
> assets, which include more than 110 mines and combined coal reserves of
> approximately 5 billion tons, including one of the world's largest and highest
> quality metallurgical coal reserve bases. Alpha and Massey believe the new entity

will be well positioned to capitalize on strong global demand trends for coal including the metallurgical coal used in the steel manufacturing process. Further, the combination is expected to permit Alpha and Massey to benefit from geographical and asset diversification, including operations and reserves in Central and Northern Appalachia, the Illinois Basin and the Powder River Basin in Wyoming.

The resulting company will have an attractive financial profile with expected pro forma 2010 revenues of approximately $6.9 billion and the highest free cash flow generation of any pureplay U.S. coal company, a responsible balance sheet, and significantly enhanced scale with a combined enterprise value of approximately $15 billion. Stockholders and customers of both companies will also benefit from synergies which are expected to exceed an annual run-rate of $150 million within the second year of operations, as well as anticipated cash flow accretion in the first full year of combined operations.

"We're very pleased that Massey has chosen to join forces with Alpha and commit to this truly transformational deal," said Kevin Crutchfield, Alpha's chief executive officer. "Together we will be America's largest supplier of metallurgical coal for the world's steel industry and a highly diversified supplier of thermal coal to electric utilities in the U.S. and overseas. The strategic and operational fit of our two companies is clear and compelling. Both companies' stockholders will gain an opportunity to participate in the upside potential of a global industry leader with a robust production portfolio, attractive growth profile and substantial reserve base. Together, we are committed to creating a stronger company that has the scale to capitalize on further growth opportunities, succeed in a changing regulatory landscape and maintain the absolute highest standards in safety and environmental excellence."

Baxter F. Phillips, Jr., Massey's chief executive officer and president, stated, "This transaction represents a tremendous opportunity for Massey to partner with our Central Appalachian neighbor, Alpha, to create a new industry leader. After a careful review of a wide range of strategic opportunities, our board unanimously determined that this is the right course for our company. The merger with Alpha offers Massey stockholders an immediate and substantial premium, as well as the opportunity to participate in the significant value creation opportunities our combination presents. We have always respected Alpha's passion for this business and we believe this is a natural and logical combination that has great upside for our members, communities, customers and other important constituents. "

Mr. Crutchfield added, "As we demonstrated in the Foundation transaction, we have a proven history of successful integrations since our inception in 2002, and we've built a strong track record of creating value through thoughtful strategic growth. We're already prepared to launch a seamless integration process, which includes implementing our employee-driven Running Right philosophy of safety

and environmental stewardship across the business. This is not just a combination of strong asset portfolios, but a transaction that will empower a combined group of almost 14,000 people and with a focus on continued investment in safety, the environment and our communities."

Alpha's chairman, Mike Quillen, commented, "We've always believed that the combination of Alpha and Massey makes for a great partnership, and we're thrilled about the opportunities this will create for the employees of both organizations. Their talents, skills and ambition will be the foundation of a dynamic industry leader."

The boards of directors of Alpha and Massey have each approved the terms of the definitive merger agreement and have recommended that their respective stockholders approve the transaction. The transaction is expected to close in mid-2011 and is subject to approval by each company's stockholders and customary regulatory approvals and closing conditions. Alpha has obtained $3.3 billion in committed financing from Morgan Stanley and Citi which, in addition to existing cash balances, will be sufficient to finance cash consideration to Massey stockholders and to refinance certain existing Alpha and Massey debt.

30.    The Individual Defendants, acting out of their own self-interest, negotiated and entered into an agreement with Alpha that is both procedurally and substantively grossly unfair to the Company's shareholders. Procedurally, the terms of the Proposed Acquisition virtually ensure that the Proposed Acquisition will be consummated because of onerous deal protection devices such as a full "no shop" provision and a $251 million termination fee. Moreover, the deal is substantively inadequate because it ignores Massey's past strong performance and its projected growth potential relative to Alpha's relatively flat stock performance.

31.    The Merger Agreement contains a "no shop" clause which absolutely prohibits the Individual Defendants from soliciting higher competitive bids for the Company, in violation of the Individual Defendants' fiduciary duties to take best reasonable steps to secure the highest value for Massey. Under Section 4.02 of the Merger Agreement, entitled "No Solicitation by the Company; Board of Directors of the Company Recommendation," the Company is absolutely

prohibited from soliciting superior proposals or withdrawing its recommendation that the Company's shareholders approve the Proposed Acquisition:

> (a) The Company shall not, nor shall it authorize or permit any of its Affiliates or any of its or their respective representatives to, (i) directly or indirectly solicit, initiate, induce, knowingly facilitate or knowingly encourage (including by way of providing non-public information) any Company Takeover Proposal or any inquiry, proposal or request for discussion that may reasonably be expected to lead to a Company Takeover Proposal, or (ii) directly or indirectly participate in any discussions or negotiations with any person regarding or cooperate in any way with any person (whether or not a person making a Company Takeover Proposal) with respect to any Company Takeover Proposal or any inquiry, proposal or request for discussion that may reasonably be expected to lead to a Company Takeover Proposal ....
> (c) Except as set forth below, neither the Board of Directors of the Company nor any committee thereof shall (i) *(A)* withdraw (or qualify or modify in any manner adverse to Parent), the Company Board Recommendation ....

32.     In addition to the absolute "no shop" provision, the Merger Agreement also includes an onerous and prohibitive termination fee designed to ensure that the Merger is consummated. Section 5.06 of the Merger Agreement, entitled "Fees and Expenses," states that: In the event that (i) this Agreement is terminated by the Company pursuant to Section 7.01 (g)(ii) . . . then the Company shall pay to the Buyer Entities an aggregate amount equal to $251 million (the "Company Termination Fee") ....

33.     The "no shop" and "termination fee" provisions work in concert to prevent any competitive superior proposals from challenging Alpha's inadequate offer, and thus reflect the Individual Defendants' breaches of fiduciary duties by structuring and agreeing to a transaction ensuring that this grossly unfair transaction will be consummated. The "no shop" provision, by its terms, prevents the Company from soliciting any competitive proposals that could challenge Alpha's original offer, and thus create a bidding incentive for Alpha or a third company to raise the sale price. Importantly, this provision absolutely prohibits Massey from soliciting superior proposals, or changing its recommendation that its shareholders accept this proposal, even if the

Company's stock price rises substantially above the Proposed Acquisition price in the future. Such restrictions deprive the Company's shareholders of the opportunity to secure the highest possible value for their equity interest in Massey.

34.     Moreover, the prohibitive early termination fee serves to chill other potential bidders from submitting unsolicited superior proposals to challenge the Proposed Acquisition. Knowing that Massey likely will not pay such an onerous termination fee, other potential bidders likely will not bother with the time, expense and effort involved in preparing and making a futile takeover bid. Thus, Alpha is virtually assured to have no competition for Massey, allowing it to purchase the Company at a grossly unfair price.

35.     The Merger Agreement also contains an indemnification clause demonstrating the self-interested motivations of the Individual Defendants in agreeing to such a procedurally flawed and substantively inadequate takeover. As part of the Proposed Acquisition, Alpha agrees to assume all of the liabilities of Massey's officers and directors - including the Individual Defendants - once the Proposed Acquisition is consummated. This provision no doubt is extremely important to the Individual Defendants, given the numerous pending lawsuits in which they are named defendants. According to the Company's November 8, 2010 Form 10-Q, some or all of the Individual Defendants have been named in no fewer than eight shareholder derivative lawsuits and other class action suits arising from their alleged wrongdoing in connection with the tragic mine explosion at the Upper Big Branch Mine in West Virginia on April 5, 2010 that killed 31 people. While defense of these lawsuits is certainly time consuming and costly for the Individual Defendants and subjects them to potential civil liability in the tens of millions of dollars, if the Individual Defendants are successful in pushing through the Proposed Acquisition all of this liability will be assumed by Alpha. This fact unquestionably provides the Individual

Defendants incentive to agree to the Merger, notwithstanding its procedural and substantive inadequacy.

36. The Proposed Acquisition is also substantively inadequate, given Massey's strong stock performance historically and in the last six months, its strong position in the bullish coal industry, and Alpha's comparatively flat stock performance.

37. Just before the global economic recession affected coal and other energy investments, Massey stock traded as high as $91.19, a full 32% over Alpha's $69.33 offer price. Though the stock significantly and temporarily dropped during the height of the recession, Massey's stock has rebounded over 450% to a high of $58.04 just three weeks ago. This rebound includes a more than 300% stock climb in the last six months alone. Market and industry analysts further expect that Massey is poised to continue its strong growth, given increasing demands for coal in the developing world and Massey's unique position as the largest and lowest cost coal producer in the strategically advantageous CAPP region. Some analysts have projected that Massey's stock could easily climb over $70 in 2011.

38. By contrast, Alpha's stock price has remained comparatively flat in the last six months while Massey's stock has more than tripled. While Alpha's stock has traded at slightly higher prices during this period, its growth rate has paled in comparison to Massey's reflecting Alpha's comparatively weaker growth position. Alpha's stock performance is obviously important in analyzing the substantive fairness of the Proposed Acquisition, because the majority of Alpha's $69.33 asking price includes a stock transfer in which Massey's stockholders will receive Alpha stock in exchange for their Massey stock. Given Massey's demonstrated and projected growth compared to Alpha, this stock swap further indicates that the asking price is inadequate.

## THE INDIVIDUAL DEFENDANTS HAVE BREACHED THEIR FIDUCIARY DUTIES

39.     Under Delaware law, the Company's public shareholders deserve the maximum value for their shares in the Proposed Acquisition. The consideration reflected in the Proposed Acquisition, however, falls well short of adequately compensating shareholders.

40.     By reason of their positions with Massey, the Individual Defendants are in possession of non-public information concerning the financial condition and prospects of Massey, and especially the true value and expected increased future value of Massey and its assets, which they have not disclosed to the Company's public stockholders. Moreover, despite their duty to maximize shareholder value, the defendants have clear and material conflicts of interest and are acting to further their own interests at the expense of the Company's public shareholders.

41.     The Proposed Acquisition is wrongful, unfair and harmful to the Company's public stockholders, and represents an effort by defendants to aggrandize their own financial position and interests at the expense of and to the detriment of Class members. Specifically, defendants are attempting to deny Plaintiff and the Class their shareholder rights via the sale of Massey on terms that do not adequately value the Company.

42.     In light of the foregoing, the Individual Defendants must, as their fiduciary obligations require:

> • withdraw their consent to the sale of Massey and allow the shares to trade freely
> - without impediments;
> • act independently so that the interests of the Company's public stockholders will be protected;
> • adequately ensure that no conflicts of interest exist between defendants' own interests and their fiduciary obligation to maximize stockholder value and, to the extent such conflicts exist, ensure that all conflicts be resolved in the best interests of the Company's public stockholders;
> • solicit competing bids to Alpha's offer to assure that the Company's shareholders are receiving the maximum value for their shares; and

• fully and fairly disclose all material information to shareholders regarding the Proposed Acquisition and the true value of the Company.

43.     Absent judicial intervention, Plaintiff and the Class will be irreparably injured.

## CLASS ACTION ALLEGATIONS

44.     Plaintiff brings this action individually and as a class action on behalf of all holders of Massey stock who are being and will be harmed by defendants' actions described herein (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendants.

45.     This action is properly maintainable as a class action.

46.     The Class is so numerous that joinder of all members is impracticable. According to the Company's SEC filings, there were more than 102 million shares of Massey common stock outstanding as of November 8, 2010.

47.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, *inter alia,* the following:

(a)     whether the Individual Defendants, aided and abetted by Massey and Alpha, have breached their fiduciary duties of undivided loyalty, independence or due care with respect to Plaintiff and the other members of the Class in connection with the Proposed Acquisition;

(b)     whether the Individual Defendants are engaging in self-dealing in connection with the Proposed Acquisition;

(c)     whether the Individual Defendants, aided and abetted by Massey and Alpha, have breached their fiduciary duties to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Acquisition;

(d)     whether the Individual Defendants are unjustly enriching themselves and other insiders or affiliates of Massey;

(e)     whether the Individual Defendants, aided and abetted by Massey and Alpha, have breached any of their other fiduciary duties to Plaintiff and the other members of the Class in connection with the Proposed Acquisition, including the duties of good faith, diligence, honesty and fair dealing;

(f)     whether the Individual Defendants have breached their fiduciary duties of candor to Plaintiff and the other members of the Class in connection with the Proposed Acquisition by soliciting shareholder votes in favor of the Proposed Acquisition based upon inadequate disclosures;

(g)     whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other offers for the Company or its assets; and

(h)     whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

48.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

49.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class.

50.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

51.     Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

52.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## COUNT I

### Claim for Breach of Fiduciary Duties
### Against the Individual Defendants

53.     Plaintiff repeats and realleges each allegation set forth herein.

54.     The Individual Defendants have violated the fiduciary duties of care, loyalty, candor, good faith and independence owed to the public shareholders of Massey and have acted to put their personal interests ahead of the interests of the Company's public shareholders.

55.     By the acts, transactions and courses of conduct alleged herein, defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value inherent in and arising from Massey.

56.     The Individual Defendants have violated their fiduciary duties by entering Massey into the Merger Agreement without regard to the effect of the proposed transaction on the Company's shareholders.

57.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to the shareholders of Massey because, among other reasons:

(a)    they failed to take steps to maximize the value of Massey to its public shareholders and they took steps to avoid competitive bidding, to cap the price of the Company's stock and to give the Individual Defendants an unfair advantage, by, among other things, failing to adequately solicit other potential acquirers or alternative transactions;

(b)    they failed to properly value Massey and its various assets and operations; and

(c)    they ignored or did not protect against the numerous conflicts of interest resulting from the directors' own interrelationships or connection with the Proposed Acquisition.

58.    Because the Individual Defendants dominate and control the business and corporate affairs of Massey, and are in possession of private corporate information concerning the Company's assets, business and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Massey which makes it inherently unfair for them to pursue and recommend any proposed transaction wherein they will reap disproportionate benefits to the exclusion of maximizing stockholder value.

59.    By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

60.    Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Proposed Acquisition, which will exclude the Class from its fair share of the Company's valuable assets and operations, and/or benefit defendants in the unfair manner complained of herein, all to the irreparable harm of the Class.

61.     The Individual Defendants are engaging in self-dealing, are not acting in good faith toward Plaintiff and the other members of the Class, and have breached and are breaching their fiduciary duties to the members of the Class.

62.     As a result of the Individual Defendants' unlawful actions, Plaintiff and the other members of the Class will be irreparably harmed in that they will not receive their fair portion of the value of the Company's assets and operations. Unless the Proposed Acquisition is enjoined by the Court, the Individual Defendants will continue to breach their fiduciary duties owed to plaintiff and the members of the Class, will not engage in arm's-length negotiations on the Proposed Acquisition terms, and will not supply to the Company's minority stockholders sufficient information to enable them to cast informed votes regarding adoption of the Proposed Acquisition contract and may consummate the Proposed Acquisition, all to the irreparable harm of the members of the Class.

63.     Plaintiff and the other members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can plaintiff and the Class be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

### COUNT II

**Aiding and Abetting the Individual Defendants' Breaches of Fiduciary Duty
Against Defendants Massey and Alpha**

64.     Plaintiff repeats and realleges each allegation set forth herein.

65.     Defendants Massey and Alpha are sued herein as aiders and abettors of the breaches of fiduciary duties outlined above by the Individual Defendants as members of the Board of Massey.

66.     The Individual Defendants breached their fiduciary duties of good faith, loyalty, and due care to the Massey shareholders in that they:

(a)     failed to take steps to maximize the value of Massey to its public shareholders;

(b)     failed to properly value Massey and its various assets and operations; and

(c)     ignored or did not protect against conflicts of interest in connection with the Proposed Acquisition.

67.     Such breaches of fiduciary duties could not and would not have occurred but for the conduct of defendants Massey and Alpha, which, therefore, aided and abetted such breaches via entering into the Merger Agreement.

68.     Defendants Massey and Alpha had knowledge that they were aiding and abetting the Individual Defendants' breaches of their fiduciary duties to the Massey shareholders.

69.     Defendants Massey and Alpha rendered substantial assistance to the Individual Defendants in their breaches of their fiduciary duties owed to the Massey shareholders.

70.     As a result of the conduct of Massey and Alpha in aiding and abetting the Individual Defendants' breaches of fiduciary duties, plaintiff and the other members of the Class have been and will be injured in that they have been and will be prevented from obtaining a fair price for their shares.

71.     As a result of the unlawful actions of defendants Massey and Alpha, Plaintiff and the other members of the Class will be irreparably harmed in that they will be prevented from obtaining the real value of their equity ownership in the Company. Unless the actions of defendants Massey and Alpha are enjoined by the Court, they will continue to aid and abet the Individual Defendants' breaches of the fiduciary duties owed to Plaintiff and the members of the

Class, and will aid and abet a process that inhibits the maximization of shareholder value and the disclosure of material information.

72.     Plaintiff and the other members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can plaintiff and the Class be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands injunctive relief, in Plaintiff's favor and in favor of the Class and against defendants as follows:

A. Declaring that this action is properly maintainable as a class action;

B. Declaring and decreeing that the Proposed Acquisition Agreement was entered into in breach of the fiduciary duties of the Individual Defendants and that the Merger Agreement is therefore unlawful and unenforceable;

C. Enjoining defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Acquisition, unless and until the Company adopts and implements a procedure or process to obtain the highest possible value for shareholders;

D. Directing the Individual Defendants to exercise their fiduciary duties to obtain a transaction which is in the best interests of the Company's shareholders until the process for the sale or auction of the Company is completed and the best possible consideration is obtained for Massey;

E. Rescinding, to the extent already implemented, the Proposed Acquisition agreement or any of the terms thereof, including the onerous and preclusive deal protection devices;

F. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

G. Granting such other and further equitable and/or injunctive relief as this Court may deem just and proper.

Dated: February 16, 2011                                      Respectfully submitted,


                                                             Daniel Cohen
                                                             Virginia Bar No. 79836
                                                             (202) 587-5061
                                                             danielc@cuneolaw.com

                                                             Robert Cynkar
                                                             Virginia Bar No. 23349
                                                             (202) 587-5063
                                                             rcynkar@cuneolaw.com
                                                             CUNEO, GILBERT & LADUCA, LLP
                                                             106-A South Columbus Street
                                                             Alexandria, Virginia 22314
                                                             (202) 789-1813 (Fax)


                                                             Joe Kendall
                                                             Jamie McKey
                                                             KENDALL LAW GROUP LLP
                                                             3232 McKinney Ave., Suite 700
                                                             Dallas, TX 75204
                                                             Telephone: (877) 744-3728
                                                             Facsimile:  (214) 744-3015
                                                             Email: jmckey@kendalllawgroup.com

                                                             Counsel for Plaintiff, Henry Mandel