IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| -------------------------------------------------------------------- X | : | |
| Henry Mandel, on behalf of himself and all others similarly situated, | : | |
| | : | |
| Plaintiffs, | : | No. 3:11-CV-120-REP |
| vs. | : | |
| | : | |
| James B. Crawford, Robert H. Foglesong, Richard M. Gabrys, Robert B. Holland, Bobby R. Inman, Dan R. Moore, Baxter F. Phillips, Jr., Stanley C. Suboleski, Linda J. Welty, Massey Energy Company, and Alpha Natural Resources, Inc., | : | |
| | : | |
| Defendants. | : | |
| ------------------------------------------------------ X | | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION FOR A STAY PENDING RESOLUTION OF THE SAME SHAREHOLDER
CLASS ACTION CLAIMS BEFORE THE DELAWARE CHANCERY COURT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ ii

I.    FACTS ..................................................................................... 1

      A.    The Delaware Litigation ........................................... 2

      B.    The Virginia Litigation ............................................ 4

II.   ARGUMENT ........................................................................ 6

      A.    The Delaware And Virginia Litigations Are Parallel Proceedings ............ 8

      B.    Delaware Has The Paramount Interest In Hearing Claims
            Governed By Delaware Corporate Law ..................................... 10

      C.    The Delaware Courts Will Adequately Protect The Plaintiffs' Rights ...... 12

      D.    The Delaware Litigation Has Priority As The First-Filed Action.............. 13

      E.    The Court Should Abstain Rather Than Subject Defendants To
            The Risk of Piecemeal Litigation................................................ 14

III.  CONCLUSION................................................................... 16

CERTIFICATE OF SERVICE ...................................................... 18

# TABLE OF AUTHORITES

**Page(s)**

**Cases**

Aventis Pharma Deutschland GMBH v. Lupin Ltd.,
403 F. Supp. 2d 484 (E.D. Va. 2005)..............................................................   7

Bondi v. Scrushy.,
820 A.2d 1148 (Del. Ch. 2003)......................................................................   12

Byerson v. Equifax Info. Servs., LLC,
467 F. Supp. 2d 627 (E.D. Va. 2006) .............................................................   13

Colo. River Water Conservation Dist. V. United States,
424 U.S. 800 (1976) .......................................................................................   1, 7

CTS Corp. v. Dynamics Corp. of Am.,
531 A.2d 206 (Del. 1987)...............................................................................   10

Day v. Union Mines, Inc.,
862 F.2d 652 (7th Cir. 1988)...........................................................................   11

Edgar v. MITE Corp.,
457 U.S. 624 (1982) .......................................................................................   10

Fisher v. Va. Elec. & Power Co.,
217 F.R.D. 201 (E.D. Va. 2003) .....................................................................   10

In re A.H. Robins Co.,
880 F.2d 709 (4th. Cir. 1989), abrogated on other grounds 521 U.S. 591 (1997)............   9-10

In re Citigroup Inc. S'holder Deriv. Litig.,
964 A.2d 106 (Del. Ch. 2009)........................................................................   10-11

In re Countrywide Fin. Corp. Deriv. Litig.,
542 F. Supp. 2d 1160 (C.D. Cal. 2008) .........................................................   9, 15

In re Topps Co. S'holders Litig.,
924 A.2d 951 (Del. Ch. 2007)............................................................. 11, 12, 13

Int'l Nickel Co. v. Martin J. Barry, Inc.,
204 F.2d 583 (4th Cir. 1953)...........................................................................   7

Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,
342 U.S. 180 (1952) .......................................................................................   7

**Page(s)**

Krieger v. Atheros Commc'ns, Inc.,
Case No. 11-CV-00640-LHK (N.D. Cal. Mar. 4, 2011) ...............................................  8, 11, 12

Kwon v. Yun,
606 F. Supp. 2d 344 (S.D.N.Y. 2009) ...............................................................  11

Lambrecht v. O'Neal,
3 A.3d 277 (Del. 2010) ...................................................................................  5

Landis v. N. Am. Co.,
299 U.S. 248 (1936) .......................................................................................  7

Lewis v. Ward,
852 A.2d 896 (Del. 2004) ...............................................................................  5

McDermott Inc. v. Lewis,
531 A.2d 206 (Del. Ch. 1987) ........................................................................  10

Miles v. Grove Mfg. Co.,
537 F. Supp. 2d 885 (E.D. Va. 1982) ..............................................................  12

Moses H. Cone Mem'l Hosp. v. Memory Constr. Corp.,
460 U.S. 1 (1983) ..........................................................................................  7

PBM Nutritionals, LLC v. Dornoch Ltd.,
667 F. Supp. 2d 621 (E.D. Va. 2009) ........................................................  7, 13, 14

Piper Aircraft Co. v. Reyno,
454 U.S. 235 (1981) .......................................................................................  12

Ryan v. Gifford,
918 A.2d 341 (Del. Ch. 2007) ........................................................................  10

Sto Corp. v. Lancaster Homes, Inc.,
11 F. App'x 182 (4th Cir. 2001) ....................................................................  9, 15

Stockbridge v. Gemini Air Cargo, Inc.,
269 Va. 609 (Va. 2005) ..................................................................................  10

Struogo v. BEA Assocs.,
No. 98 Civ. 3725, 2000 WL 45714 (S.D.N.Y. Jan. 19, 2000)..........................  11

Teamsters Local Nos. 175 & 505 Pension Trust Fund v. IBP, Inc.,
123 F. Supp. 2d 514 (D.S.D. 2000)................................................................  15

**Page(s)**

U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.,
357 F. Supp. 2d 925 (E.D. Va. 2005) .......................................................................... 12

Vulcan Chem. Techs., Inc. v. Barker,
297 F.3d 332 (4th Cir. 2002) ........................................................................................ 7

Williford v. Armstrong World Indus., Inc.,
715 F.2d 124 (4th Cir. 1983) ....................................................................................... 6-7

The complaint in this action, as well as the complaints in *Perkins v. Crawford, et al.*, Case No. 3:11-CV-082-REP, and *Mostaed v. Crawford, et al.*, Case No. 3:11-CV-079-REP, each substantially identical, seek – on behalf of the same plaintiffs, a class of Massey Energy Company ("Massey") shareholders – to block the merger of Massey, a Delaware corporation, and Alpha Natural Resources, Inc. ("Alpha"), also a Delaware corporation, on the basis of claims plaintiffs themselves admit are governed by Delaware law.  The Delaware Chancery Court is already hearing a challenge to the Massey-Alpha proposed merger.  That prior pending Delaware litigation asserts the same core set of claims on behalf of the same plaintiff class against the same defendants.  There is no justification for burdening the parties – and two courts – with hearing the same case.  While defendants deny that the proposed merger is in any way improper, Delaware surely has the paramount interest in hearing claims that directors of a Delaware corporation are allegedly breaching their fiduciary duties under Delaware law and are being aided and abetted by another Delaware corporation.  There can be no doubt that the Delaware court will adequately protect the rights of the plaintiffs in these actions, as they and all other Massey shareholders are already part of the Delaware proceeding through the class action allegations pending there.  Moreover, defendants are willing (and have agreed with counsel in Mostaed and Perkins) to provide the Plaintiffs in these actions copies of the documents that are to be produced by Massey in the Delaware litigation.  Accordingly, under the principles set forth in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), this Court should stay the actions filed here pending resolution of the proceedings in the Delaware Chancery Court rather than subject the parties to the burden, expense and risk of piecemeal duplicative litigation.

## I.    FACTS

On January 29, 2011, energy companies Alpha and Massey announced a proposed merger (the "Proposed Merger").    According to the merger agreement (the "Merger Agreement"), the transaction would create a company with an enterprise value of over $15 billion.[1]  The Merger Agreement placed a value of $69.33 per share of Massey common stock, a 21% premium to Massey's share price on the last trading day before the Proposed Merger was announced, and implied an enterprise value for Massey of $8.5 billion.[2]

### A.    The Delaware Litigation

In re Massey Energy Derivative Litigation, No. 5430-VCS (Del. Ch.) (the "Delaware Litigation"), was originally filed in April 2010 as a derivative action claiming that Massey directors and officers had breached their fiduciary duties by failing to adequately oversee the company's compliance with safety regulations which Plaintiffs claim led to the tragedy at Massey's Upper Big Branch mine in West Virginia on April 5, 2010, at which 29 miners died. (See Pl.'s Mot. for Leave to Amend the Verified S'holder Consol. Deriv. Compl. (Reents Decl. Ex. 2 ¶¶ 1-2).  An amended complaint was filed on July 7, 2010.  (See id.)  The action was consolidated with other related cases on October 21, 2010, and a consolidated complaint was filed on January 10, 2011.  (See id. ¶¶ 1, 3.)  Even as early as the January 10, 2011, consolidated complaint, Plaintiffs alleged that the recently announced intention of the Board to seek a buyer for Massey was an attempt by the Board to avoid liability by finding a transaction that would extinguish derivative standing.  (Id. ¶ 3.)

---

[1] Alpha Natural Resources and Massey Energy Agree to $8.5 Billion Combination, January 29, 2011 (Reents Decl. Ex. 1 at 1.)

[2] Id.

2

On January 31 of this year, after the Proposed Merger was announced, the Delaware plaintiffs sought leave to file a second amended complaint (the "Delaware SAC") to seek to enjoin the Proposed Merger on behalf of the class of Massey shareholders.[3]  (See id. ¶ 5.)

To Defendants' knowledge, the Delaware SAC was the first pleading anywhere to seek to enjoin the Proposed Merger.  It asserts class claims for breach of fiduciary duty against the Massey directors who agreed to the merger with Alpha, claiming that the "primary reason" these directors "agreed to the merger was to eliminate the liability that the Individual Defendants faced" from the derivative claims in the Delaware Litigation, because the merger allegedly "would extinguish the derivative standing of Massey shareholders to pursue these claims, leaving the Individual Defendants free from having to answer for their misdeeds." (Reents Decl. ¶ 9.) That motivation, the Delaware Litigation plaintiffs allege, led the Massey directors to put their interests ahead of the interests of the Class of Massey shareholders by agreeing to a merger when "Massey's stock was down" temporarily due to the aftermath of the Upper Big Branch explosion and agreeing to "sell Massey on the quick and on the cheap so that they could extinguish . . . their potential liability" arising out of derivative litigation related to that explosion.  (Id. ¶ 10.) The Massey directors, according to Delaware plaintiffs, breached their duties by failing to secure the best price possible, failing to secure downside protection for the merger consideration, and by agreeing to a "no shop" provision, matching rights, and a substantial termination fee that "virtually eliminated the possibility of a superior proposal."  (Id. ¶ 11.)  Alpha, and Mountain Merger Sub, Inc., the Delaware corporation Alpha formed to effectuate the merger, are alleged in the Delaware Litigation to have aided and abetted the Massey directors' breaches of fiduciary

---

[3] As detailed, infra, leave to amend was subsequently granted by the Delaware Chancery Court.

duty by "orchestrat[ing] the merger for the purpose of eliminating the Individual Defendants' potential liability" on the safety-related derivative claims.  (Id. ¶ 12.)

On February 7, 2011, an additional class complaint was filed in the Delaware Chancery Court alleging only the merger-related claims of breach of fiduciary duty against the Massey directors and aiding and abetting against Alpha.  See Compl., Silverman v. Phillips, No. 6171-CC (Del. Ch.) (Reents Decl. Ex. 3).  Like the Delaware SAC, the Silverman complaint asserts class claims for breach of fiduciary duty against the Massey directors who agreed to the merger with Alpha.  (See id.)  On February 9, 2011, the Chancery Court consolidated the Silverman class action into the Delaware Litigation.  (See Order Implementing Mar. 1, 2011 Rulings (Reents Decl. Ex. 5).)  On February 14, 2001, another class complaint was filed in Delaware Chancery Court alleging breach of fiduciary duty claims against the Massey directors who agreed to the merger with Alpha and aiding and abetting claims against Alpha.  (See Compl., Goe v. Massey Energy Co., No. 6193-CC (Del. Ch.) (Reents Decl. Ex. 4).)  On February 24, 2011, the Chancery Court consolidated this action into the Delaware Litigation.  (See Reents Decl. Ex. 5.)

At a hearing on March 1, 2011, Vice Chancellor Strine of the Delaware Chancery Court approved the filing of the proposed Delaware SAC and directed the parties to pursue targeted discovery with respect to the merger-related claims.  (See id.)  The Order also approved a structure for lead plaintiffs and counsel leadership.  Under the Chancery Court's direction, the plaintiffs in the Delaware Litigation have served document requests and interrogatories on Massey focusing first on the Massey directors' valuation and evaluation of the pre-existing derivative claims in negotiating the merger consideration.

B.      **The Virginia Litigation**

The three actions filed in this Court on February 2, 2011 (Mostaed), February 4 (Perkins) and February 18 (Mandel) (together, the "Virginia Litigation") also challenge the Proposed Merger on the same grounds as those asserted in the Delaware SAC.

The Virginia and the Delaware Litigations materially and substantially overlap.  First, each of the plaintiffs here purport to represent a class of Massey stockholders the Proposed Merger allegedly harmed – exactly the same class as is already before the Court of Chancery in the Delaware Litigation.  (Compare Mostaed Compl. ¶ 50; Perkins Compl. ¶ 50; Mandel Compl. ¶ 44 with Reents Decl. ¶ 16.)

Second, the allegations in the Virginia and Delaware Litigations are nearly identical.  The Virginia plaintiffs complain that Massey's directors breached fiduciary duties under Delaware law by "negotiat[ing] and enter[ing] into an agreement with Alpha that is both procedurally and substantively grossly unfair to the Company's shareholders," it having been reached following a "significant[] and temporar[y] drop[]" in Massey's share price for consideration that does not adequately compensate Massey shareholders for an expected rebound in the share price. (Compare Mostaed Compl. ¶¶ 35, 43; Perkins Compl. ¶¶ 35, 43; Mandel Compl. ¶¶ 30, 37 with Reents Decl. ¶ 10.)  Critically, each of the Virginia complaints puts at issue the safety-related derivative claims pending in Delaware by alleging that the Massey directors were motivated to reach an unfair agreement because "eight derivative lawsuits against the Individual Defendants will be extinguished entirely following the Merger."[4]  (Mostaed Compl. ¶¶ 40-41; Perkins

---

[4] Incidentally, Plaintiffs' assertion that the merger will "extinguish" the pending derivative claims is incorrect as a matter of law.  It is well-settled that, in a transaction of this type, "derivative claims pass by operation of law to the surviving corporation, which then has the sole right and standing to prosecute the action."  Lewis v. Ward, 852 A.2d 896, 901 (Del. 2004). Further, the Delaware Supreme Court has recently made clear that Plaintiffs themselves could attempt to pursue the claims double-derivatively after the merger by making a demand on, or

Compl. ¶¶ 40-41; see also Mandel Compl. ¶ 35.)  Finally, like the Delaware Litigation, the Virginia Litigation asserts that Alpha "aided and abetted" the Massey directors in their breaches of their fiduciary duties.  (Mostaed Compl. ¶ 73; Perkins Compl. ¶ 73; Mandel Compl. ¶ 67.)

Third, the Virginia and Delaware Litigations seek identical relief against the same defendants.  Both sets of litigations are representative actions that name Massey's nine current directors and Alpha as defendants.  (Compare, e.g., Mostaed Compl. ¶¶ 12-23, with Reents Decl. ¶ 13.)  And both the Delaware and Virginia Litigations allege that plaintiffs have "no adequate remedy at law," and seek injunctive relief to prevent consummation of the Merger.  (Compare, e.g., Mostaed Compl. ¶ 78 and Prayer for Relief, with Reents Decl. ¶ 14.)

Finally, Delaware is an obvious place for litigation brought by shareholders of a Delaware corporation challenging, under Delaware law, the conduct of the directors they elected.  The Virginia Litigation involves legal issues largely foreign to Virginia.  The Virginia complaints assert claims arising under Delaware law (Mostaed Compl. ¶¶ 25-26; Perkins Compl. ¶¶ 25-26; Mandel Compl. ¶¶ 23-24), and do not cite, refer to, or allege violations of any law other than the law of Delaware.  These cases pose no federal question.  Rather, in each case before this Court, subject matter jurisdiction is predicated exclusively on the happenstance of diversity of citizenship between the parties.  Indeed, because no federal claims have been or could be asserted with respect to the facts complained of in the Virginia complaints, the only named plaintiffs who could bring this action are those persons or entities with no connection to this forum.  (Mostaed Compl. ¶ 9; Perkins Compl. ¶ 9; Mandel Compl. ¶ 7.)  And, indeed, none of the plaintiffs here come from Virginia; they are citizens of Ohio, California, and New York, respectively.  (Mostaed Compl. ¶ 12; Perkins Compl. ¶ 12; Mandel Compl. ¶ 10.)  While Alpha

---

demonstrating demand futility, as to the board of the acquiring corporation.  See Lambrecht v. O'Neal, 3 A.3d 277, 281-82 (Del. 2010).

and Massey are headquartered in Virginia, the challenges to the Proposed Merger do not relate to the operations of either company.

## II.    ARGUMENT

### THE COURT SHOULD STAY THIS CASE UNTIL RESOLUTION OF THE SAME SHAREHOLDER CLASS ACTION CLAIMS PENDING BEFORE THE DELAWARE CHANCERY COURT

A motion to stay, though not expressly provided for by the Federal Rules of Civil Procedure, is a power inherent in the courts "under their general equity powers and in the efficient management of their dockets." Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 127 (4th Cir. 1983); Aventis Pharma Deutschland GMBH v. Lupin Ltd., 403 F. Supp. 2d 484, 489 (E.D. Va. 2005). In using its authority to grant a stay a court is given wide discretion to "weigh competing interests and maintain an even balance." Landis v. N. Am. Co., 299 U.S. 248, 255 (1936); see also Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183-84 (1952). Courts may consider factors relevant to the stay, including whether all necessary parties are present in each action, convenience, and judicial economy and comity. See Int'l Nickel Co. v. Martin J. Barry, Inc., 204 F.2d 583, 585-86 (4th Cir. 1953).

Consistent with these principles, a federal court should stay a case where there is a contemporaneous parallel state court proceeding based on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) (quotation marks omitted).[5]

---

[5] See also Vulcan Chem. Techs., Inc. v. Barker, 297 F.3d 332, 341 (4th Cir. 2002) (concluding that district court should have abstained under Colorado River doctrine and remanding with instruction to dismiss); PBM Nutritionals, LLC v. Dornoch Ltd., 667 F. Supp. 2d 621, 633 (E.D. Va. 2009) (concluding that stay under Colorado River doctrine was appropriate).

Here, the following considerations under the <u>Colorado River</u> doctrine militate strongly in favor of a stay:  (1) the Virginia Litigations are largely identical to the Delaware Litigation; (2) Delaware, as the jurisdiction under which Massey and Alpha are chartered, has a paramount interest in hearing the case, whose claims are governed by Delaware law; (3) the Delaware Chancery Court will adequately protect the parties' rights; (4) the Delaware Litigation has priority as the first-filed suit; and (5) there is a critical need to avoid piecemeal litigation in such cases of identical class actions seeking to enjoin a single transaction. <u>Colo. River Conservation Dist.</u>, 424 U.S. at 818; <u>see also</u> <u>Moses H. Cone Mem'l Hosp. v. Memory Constr. Corp.</u>, 460 U.S. 1, 15 16; 23 (1983); <u>Vulcan Chem. Techs.</u>, Inc., 297 F.3d at 341.

In words that apply with equal, if not greater, force here, just last week the Northern District of California granted a stay of state law claims in an action to enjoin a merger that was already the subject of pending litigation in the Delaware Chancery Court:

> [T]he class claims [before this court] raise heightened concerns about piecemeal litigation, fall within the Delaware court's unique expertise in Delaware corporate law, and are virtually identical to the state-law claims raised in the Delaware actions.  The proposed Delaware class action is capable of fully protecting the rights of Plaintiff and the purported shareholder class, and the Delaware court has already begun to move forward with discovery and litigation of these claims.  Taken together, these facts present the 'exceptional circumstances' required to support a stay under the *Colorado River* doctrine.

<u>Krieger v. Atheros Commc'ns, Inc.</u>, Case No. 11-CV-00640-LHK, Slip op. at 13-14 (N.D. Cal. Mar. 4, 2011) (Reents Decl. Ex. 6).   The same conclusion must obtain here.

## A.    The Delaware And Virginia Litigations Are Parallel Proceedings

"Suits are parallel if substantially the same parties litigate substantially the same issues in different forums."  <u>McLaughlin v. United Virginia Bank</u>, 955 F.2d 930, 935 (4th Cir. 1992). Under this standard, there can be no serious debate that the Virginia and Delaware Litigations are

parallel for the purpose of staying the Virginia actions. The parties in the Delaware and Virginia Litigations are virtually identical, and the issues raised and remedies sought are the same. Both the Delaware and Virginia Litigations are class actions brought on behalf of all Massey stockholders on claims arising from the Proposed Merger. The defendants in each action include Alpha and the current directors of Massey. Each of the complaints alleges that Massey's directors failed to exercise their duties of good faith and loyalty by agreeing to an unfair price for Massey and eliminating the possibility of a superior proposal, and that they did so allegedly in order to escape liability arising from the derivative claims already pending against them in Delaware. Each of the complaints similarly alleges that Alpha knowingly aided and abetted Massey's directors' breaches of fiduciary duty.

Plaintiffs themselves acknowledge that there can and should be only one class of plaintiff shareholders prosecuting these claims, and that a single court should hear the claims. In both the Delaware and Virginia Litigations plaintiffs seek class certification because the prosecution of separate actions by individual members of the class would create a risk of inconsistent adjudications.[6] Each complaint – here and in Delaware – asserts that prosecuting separate actions would prejudice the defendants by exposing them to rulings requiring "incompatible standards of conduct."[7] Thus, all the plaintiffs agree that these actions can, and should, only proceed in a single forum on a consolidated basis.[8]

While each case is brought by a different named plaintiff, each is brought on behalf of the same alleged class of Massey shareholders. That the named plaintiffs are different is, therefore,

---

[6] Reents Decl. ¶ 15; Mostaed Compl. ¶ 56; Perkins Compl. ¶ 56; Mandel Compl. ¶ 50.

[7] Id.

[8] Indeed, on the basis of these same principles, Plaintiffs' counsel in the Mostaed and Perkins actions have moved to consolidate those actions within this forum.

irrelevant under Colorado River. See Sto Corp. v. Lancaster Homes, Inc., 11 F. App'x 182, 187 (4th Cir. 2001) ("[T]he parties only need to be substantially the same for the Colorado River abstention doctrine to apply."); see also In re Countrywide Fin. Corp. Deriv. Litig., 542 F. Supp. 2d 1160, 1170 (C.D. Cal. 2008) (concluding that federal and state class actions were parallel even though named plaintiffs were different).  Any judgment in either the Delaware or Virginia Litigations therefore necessarily would have *res judicata* effect on the other class action, because the purported class would be a non-opt out class under Federal Rule of Civil Procedure 23(b)(1) or (b)(2) or the corresponding rule of the Delaware Court of Chancery.  See In re A.H. Robins Co., 880 F.2d 709, 728 (4th Cir. 1989), abrogated on other grounds, 521 U.S. 591 (1997) (an action maintained under either (b)(1) or (b)(2) has res judicata effect as to all the class); Fisher v. Va. Elec. & Power Co., 217 F.R.D. 201, 212-13 (E.D. Va. 2003) (same).

**B.    Delaware Has The Paramount Interest In Hearing Claims Governed By Delaware Corporate Law**

Each of the Virginia complaints plead that the Massey directors violated their fiduciary duties "under Delaware law."  Mostaed Compl. ¶ 25; Perkins Compl. ¶ 25; Mandel Compl. ¶ 23. Plaintiffs themselves thereby acknowledge that Delaware law exclusively governs their claims. That is because it is well-settled that disputes arising over the "internal affairs" of a corporation – including alleged breaches of duties owed by directors to the corporation and shareholders – are governed by the law of the state of incorporation.  See, e.g., Edgar v. MITE Corp., 457 U.S. 624, 645 (1982); Stockbridge v. Gemini Air Cargo, Inc., 269 Va. 609, 613 (Va. 2005).  The internal affairs doctrine is grounded in the U.S. Constitution, which generally requires that only one state's law should govern a corporation's internal affairs.  See Edgar, 457 U.S. at 645; see also CTS Corp. v. Dynamics Corp. of Am., 481 U.S. 69, 89 (1987) ("No principle of corporation law and practice is more firmly established than a State's authority to regulate domestic corporations

. . . ."); <u>McDermott Inc. v. Lewis</u>, 531 A.2d 206, 216 (Del. 1987) (internal affairs is doctrine "of serious constitutional proportions – under due process, the commerce clause and the full faith and credit clause").

Delaware, as Massey's state of incorporation, has a "significant and substantial interest in overseeing the conduct of those owing fiduciary duties to shareholders of Delaware corporations," <u>Ryan v. Gifford</u>, 918 A.2d 341, 349 (Del. Ch. 2007) (internal citation and quotation marks omitted), and in ensuring the uniform interpretation and enforcement of its corporation law.  <u>See</u> <u>In re Citigroup Inc. S'holder Deriv. Litig.</u>, 964 A.2d 106, 118 (Del. Ch. 2009) ("Delaware has an ongoing interest in applying [its] law to director conduct in the context of current market conditions – conditions which change rapidly and pose new challenges for directors and officers of Delaware corporations."); <u>see also</u> <u>In re Topps Co. S'holders Litig.</u>, 924 A.2d 951, 953-54 (Del. Ch. 2007).  The Delaware Chancery Court has emphasized that Delaware carefully structured its judicial system to create uniform corporate law that should govern Delaware corporations.  <u>See</u> <u>In re Topps Co.</u>, 924 A.2d at 959 ("The important coherence-generating benefits created by our judiciary's handling of corporate disputes are endangered if our state's compelling public policy interest in deciding these disputes is not recognized and decisions are instead routinely made by a variety of state and federal judges who only deal episodically with our law.").  As federal courts have recognized, "the Delaware Court of Chancery unquestionably has a well-recognized expertise in the field of state corporation law and is a particularly suitable forum to adjudicate those disputes."  <u>Krieger</u>, slip op. at 12, citing <u>In re Countrywide Fin. Corp. Deriv. Litig.</u>, 542 F. Supp. 2d at 1173 (C.D. Cal. 2008) (quotation marks omitted); <u>Strougo v. BEA Assocs.</u>, No. 98 Civ. 3725, 2000 WL 45714, at *5 (S.D.N.Y. Jan. 19, 2000).  <u>See also</u> <u>Kwon v. Yun</u>, 606 F. Supp. 2d 344, 365 (S.D.N.Y. 2009) (Delaware

Courts "have far more expertise in construing their own law and are widely recognized as leaders in the area of corporate law."); Day v. Union Mines, Inc., 862 F.2d 652, 660 (7th Cir. 1988) ("[A] state court's expertise in applying its own law favors a Colorado River stay."). "Thus, the fact that Delaware corporate law provides the rule of decision on the merits of Plaintiff[s'] state-law class action claims strongly favors a stay of those claims." Krieger, slip op. at 12.

In contrast to Delaware's paramount interest in consistently adjudicating its own corporate law, Virginia federal courts have little interest in expending their resources adjudicating a dispute in which there are no Virginia named plaintiffs, no issues of Virginia law, no issues of federal law and no other federal interest to be served by exercising jurisdiction. See Miles v. Grove Mfg. Co., 537 F. Supp. 885, 889 (E.D. Va. 1982) (where repetitive action involving issues of state law is filed in state and federal courts, an order of stay by the federal court is appropriate). Any interest this Court may have in adjudicating this dispute does not outweigh the unnecessary burden this case would place on the Court, which would be required to use its limited judicial resources to apply the laws of Delaware and to regulate the conduct of a corporation governed by Delaware law where the Delaware courts are already doing so.

## C.      The Delaware Courts Will Adequately Protect The Plaintiffs' Rights

There can be no doubt that the Delaware court will adequately protect the rights of Massey shareholders, including the named plaintiffs here. Those named plaintiffs chose to invest in a Delaware corporation and to assert in these actions claims governed by Delaware law. They should not be heard to complain that their Delaware law claims are being litigated in Delaware courts. See In re Topps Co., 924 A.2d at 962; Biondi v. Scrushy, 820 A.2d 1148, 1162 (Del. Ch. 2003) ("By investing in a corporation chartered in Delaware, stockholders seek out and are entitled to the protections afforded by [Delaware] law."). The relief sought and claims asserted in the Delaware Litigation includes, but is not limited to, the injunction sought and

causes of action asserted here, meaning that the Delaware Litigation can "provide the full measure of relief sought by Plaintiff[s] in th[ese] federal action[s]." Krieger, slip op. at 4.

Conversely, plaintiffs have offered no reason why they have chosen a Virginia forum when the named plaintiffs are not even Virginia residents and they could proceed in Delaware, where their claims were already being pursued when those cases were filed.  See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981) (holding that foreign plaintiff's choice of forum should be given less deference than if forum was plaintiff's home forum); see also U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd., 357 F. Supp. 2d 925, 936 (E.D. Va. 2005) ("[A] plaintiff's choice of forum is not entitled to substantial weight if the plaintiff chooses a foreign forum, or the cause of action bears little or no relation to that forum.").  Representative plaintiffs who are not Virginia residents have no cognizable interest in having a Virginia federal court adjudicate issues of Delaware law.  See In re Topps Co., 924 A.2d at 953 ("In a representative action . . . the desire of an individual plaintiff to litigate in a forum other than the state of incorporation has no legal or equitable force, particularly when the plaintiff is not even a resident of the state in which he seeks to litigate.").  This conclusion applies with particular force here.  "In class actions, the named plaintiff's choice of forum is afforded little weight because in such a case, there will be numerous potential plaintiffs, each possibly able to make a showing that a particular forum is best suited for the adjudication of the class' claim."  Byerson v. Equifax Info. Servs., LLC, 467 F. Supp. 2d 627, 633 (E.D. Va. 2006) (internal citations omitted).  Indeed, Messrs. Mostaed, Perkins and Mandel are already part of the Delaware Litigation that is brought on their behalf and on behalf of the myriad other Massey shareholders.

D.     **The Delaware Litigation Has Priority As The First-Filed Action**

The Delaware Litigation was filed before, and has progressed farther than, the Virginia Litigations, giving it priority under the Colorado River doctrine.  "The first-filed rule is an

important doctrine that is illustrative of the applicability of the principle of comity [and . . . provides that, as a matter of sound judicial administration, the first suit filed should have priority over the second, absent the showing of balance of convenience in favor of the second action." Dornoch Ltd., 667 F. Supp. 2d at 632 (internal citations omitted).  Plaintiffs have asserted derivative shareholder claims against Massey's directors in Delaware Chancery Court since April 2010.  In their January 10, 2011 consolidated complaint, they made allegations regarding the impending merger.  After the Massey board announced the proposed merger with Alpha on January 29, 2011, the Delaware plaintiffs moved to amend their consolidated complaint on January 31, 2011, seeking to include additional claims for breach of fiduciary duty, based on allegations that the purpose of the merger is to avoid derivative liability.  Two separate complaints alleging only the merger-related class action claims were also filed in Delaware on February 7 and 14, 2011, and were consolidated into the derivative complaint on February 9 and 24, 2011.  On March 1, 2011, the Delaware Chancery Court granted leave to amend the consolidated complaint, thereby confirming that the amendment related back to the commencement of the Delaware Litigation or, at a minimum, to the January 31, 2011 application for leave to file the Delaware SAC.

By contrast, the Virginia Litigations were filed in February and after plaintiffs in the Delaware Litigation moved to amend their complaint.  The Delaware Litigation therefore has priority as the first-filed action.  See Dornoch LTD., 667 F. Supp. 2d 621, 633 (action in which complaint was amended was considered first-filed for purposes of determining propriety of a stay even though amendment occurred after second suit was filed).

Not only was the Delaware Litigation first-filed, but it has progressed further than the Virginia Litigations.  Lead plaintiffs have been appointed and counsel leadership organized in

the consolidated Delaware Litigation, and plaintiffs have already served discovery requests on

Massey and third-party subpoenas to financial advisors to the merger parties.

    **E.**    **The Court Should Abstain Rather Than Subject Defendants To The Risk of Piecemeal Litigation**

    The avoidance of piecemeal litigation in this case in and of itself calls for issuing a stay.

First, the plaintiffs themselves concede that the claims being asserted here and in Delaware can

only be pursued in one court in one proceeding, lest the defendants (and the shareholders) suffer

potentially inconsistent and incompatible rulings.  Indeed, that is why the plaintiffs here and in

Delaware seek certification of non-opt out classes.  Second, because the Delaware Litigation

includes additional parties and two additional safety-related derivative counts, a federal court

ruling here would likely leave issues for resolution in Delaware, resulting in piecemeal litigation.

See Sto Corp., 11 F. App'x at 187 (presence of at least one other party in state suit created

possibility of piecemeal litigation).  The risk of piecemeal litigation is especially great in cases

such as this where conflicting decisions regarding plaintiffs' requests for an injunction could

negatively affect many shareholders.  See In re Countrywide Fin. Corp. Deriv. Litig., 542 F.

Supp. 2d at 1172 (risk of inconsistent results in merger litigation presented special circumstances

sufficient to abstain from exercising jurisdiction).  In In re Countrywide Financial Corporation

Derivative Litigation, a class action merger litigation, Judge Pfaelzer of the Central District of

California noted that "[p]roceeding in parallel also creates the risk of conflicting results in

enjoining a multibillion dollar merger that impacts both innumerable shareholders and the entire"

industry.  542 F. Supp. 2d at 1172.  See also Teamsters Local Nos. 175 & 505 Pension Trust

Fund v. IBP, Inc., 123 F. Supp. 2d 514, 518 (D.S.D. 2000) (concluding that both defendants and

shareholders would suffer in actions requesting an injunction of a proposed merger if "the courts

cannot reach a definite and speedy conclusion as to what rules must be followed in the sale of

IBP . . . .").   Here, the large shareholder class will be harmed by the delays inherent in piecemeal litigation and defendants Massey and Alpha will be harmed by the delay in their ability to consummate the Proposed Merger.

### III.   CONCLUSION

For the foregoing reasons, defendant Alpha Natural Resources, Inc., asks the Court to stay all claims filed here pending the resolution of the prior pending Delaware Litigation.

Respectfully submitted,

ALPHA NATURAL RESOURCES, INC.


By:

/s/ Robert M. Rolfe
_____

Robert M. Rolfe, Counsel

Robert M. Rolfe (VSB No. 15779)
Erin L. Barrett (VSB No. 74928)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
(804) 788-8466
rrolfe@hunton.com

Mitchell A. Lowenthal
Boaz S. Morag
CLEARY GOTTLIEB STEEN & HAMILTON
LLP
One Liberty Plaza
New York, NY 10006
(212) 225-2000

Michael R. Lazerwitz
CLEARY GOTTLIEB STEEN & HAMILTON
LLP
2000 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 974-1500

*Attorneys for Defendant Alpha Natural Resources,
Inc.*

/s/ Timothy J. St. George

Alan D. Wingfield  (VSB No. 27489)
Timothy J. St. George  (VSB No. 77349)
TROUTMAN SANDERS LLP

1001 Haxall Point
P.O. Box. 1122
Richmond, VA 23218-1122
Telephone: (804) 697-1254
Facsimile: (804) 698-6013
alan.wingfield@troutmansanders.com

CRAVATH, SWAINE & MOORE LLP
Stuart W. Gold
Julie A. North

825 Eighth Avenue
Worldwide Plaza
New York, NY 10019-7475
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Defendants Massey Energy
Company, James B. Crawford, Robert H.
Foglesong, Richard M. Gabrys, Robert B. Holland,
Bobby R. Inman, Dan R. Moore, Stanley C.
Suboleski, and Linda J. Welty*


/s/ Stephen E. Baril

Stephen E. Baril  (VSB No. 19604)
SANDS ANDERSON PC

1111 E. Main Street, Suite 2300
Richmond, VA 23219-2906
Telephone: (804) 783-7234
Facsimile: (804) 783-7291
SBaril@SandsAnderson.com

*Attorneys for Defendant Baxter F. Phillips, Jr.*

**CERTIFICATE OF SERVICE**

I certify on this 11th day of March, 2011, I filed a copy of the forgoing with the Court's

ECF filing system, and thereby served a copy of this instrument to the following attorneys:


Daniel Cohen, Esq.
Robert Cynkar, Esq.
Cuneo, Gilbert & LaDuca LLP
106-A South Columbus Street
Alexandria, Virginia 22314

Joe Kendall, Esq.
Jamie McKey, Esq.
Kendall Law Group LLP
3232 McKinney Avenue
Suite 700
Dallas, Texas 75204



_____Robert M. Rolfe_____

Robert M. Rolfe, Counsel